In the
United States Court of Appeals
For the Seventh Circuit

No. 01-4024

Finer Foods, Inc.,

Petitioner,

v.

United States Department of Agriculture,

Respondent.

Petition for Review of an Order of the
Department of Agriculture Under the Perishable
Agricultural Commodities Act

Submitted December 7, 2001--Decided December 11, 2001

   Before Bauer, Easterbrook, and Williams,
Circuit Judges.

   Easterbrook, Circuit Judge.  Finer Foods,
Inc., seeks a stay pending judicial
review of an administrative order
suspending its license to operate as a
dealer under the Perishable Agricultural
Commodities Act, 7 U.S.C. sec.sec. 499a-
499s.

   The Department of Agriculture offers two
jurisdictional defenses. First, it
contends, the court lacks personal juris
diction over the Department because the
petition for review was forwarded to
federal officials in Washington, D.C., by
fax rather than by mail, as the Hobbs Act
requires. See 28 U.S.C. sec.2344. Second,
it asserts, the court lacks subject-
matter jurisdiction because there is no
"final" administrative order. See 28
U.S.C. sec.2342(2). Both of these
contentions are frivolous. We are
surprised and disappointed that they have
been advanced by counsel for the federal
government. (We add for the sake of
completeness that all three lawyers whose
names appear on the papers work for the
Department of Agriculture; the Department
of Justice apparently has allowed the
agency to represent itself.)

   Once a private party files a petition
for review, this court's Clerk must serve

the federal agency by registered mail (return receipt requested). In light of the disruptions to the postal system caused by terrorist activity in recent months, the Clerk has begun to forward papers by fax in addition to mail. Naturally the fax copy arrives first, for it is not delayed by any security screening procedures. Why should this step deprive the court of personal jurisdiction over the Department? In this case, notice was sent by mail to the Department and the Attorney General on November 21, the day after Finer Foods filed its petition for review. In light of the Department's complaint and the possibility that the initial mailed notice is stuck somewhere awaiting security screening, the Clerk has sent a second postal notice as well. The Hobbs Act has been followed--and an extra, speedier, more secure, and safer method of notice has been added.

If the Attorney General, who superintends the federal government's interests in litigation, believes that immediate electronic notification is an impediment to his work, he should so notify this court, and we will stop providing courtesy copies. But on no account does the provision of electronic notice deprive private parties such as Finer Foods-- which lack influence over either the postal system or the Clerk's Office--of their judicial remedy.

As for the supposed lack of a final decision: The order in question, which suspends Finer Foods' license with immediate and indefinite effect (as of 3:00 p.m. on November 16, 2001), is final not only because of that ongoing effect but also because no further administrative review is available. See FTC v. Standard Oil Co. of California, 449 U.S. 232 (1980) (defining "final" order for the purpose of a similar provision in 5 U.S.C. sec.704). The Perishable Agricultural Commodities Act allows the Department, "by order," 7 U.S.C. sec.499m(a), to suspend a license until required information has been provided--and the Administrative Procedure Act, 5 U.S.C. sec.551(6), tells us that an administrative "order" is a final decision. An "order" is the conclusion of an administrative proceeding--as distinguished from, say, a subpoena or other interim step.

Nonetheless, the Department contends, Finer Foods must wait until the Department chooses to commence an administrative proceeding alleging a substantive violation of the Act, and then seek review of the final decision in that proceeding. Yet this proposed method leaves the licensee at the Department's mercy. Now that Finer Foods' license has been suspended, the Department may never institute such a proceeding; and if it does institute one, it is not clear how or when the discovery dispute that has led to the current suspension would be adjudicated. The prospect that some future administrative case may (or may not) begin does not make the ongoing suspension any the less final.

So we are entitled to reach the merits of Finer Foods' motion. But the Department insists that we stop at the threshold: the need to show irreparable harm. According to the Department, Finer Foods went out of business before November 16 and thus cannot suffer harm from the order suspending its license. The support for this statement is a declaration (attached to the Department's response) of Joan Colson, one of the Department's auditors, who asserts that in October 2001 she visited Finer Foods' business premises and found them locked and abandoned, and that Finer Foods' former customers and suppliers say that they are now doing business with Mid West Institutional Food Distributors.

Finer Foods' response accuses Colson of perjury and the Department of fraud on the court. According to an affidavit of Mary Ann Fitzgerald, Finer Foods' corporate secretary, Finer Foods had operated without interruption and employed 18 persons until November 16, when the Department suspended its license. According to Fitzgerald, the place Colson visited and found locked in early October 2001 was Finer Foods' former business premises; the firm moved in late August 2001. What is more, according to Fitzgerald, Colson knows of the move and has visited Finer Foods' new location, vital facts omitted from Colson's declaration. Fitzgerald added that Finer Foods has notified the Department formally and that Wes Hammond, one of the Department's investigators, has spent more than 30 days at Finer

Foods' new location reviewing records.

Someone is not telling this court the truth. Who is trying to deceive the court we do not know--though the fact that Finer Foods is paying counsel in an effort to have its license reinstated supports an inference that the status of the license matters (which it does only if Finer Foods remains in business). Going deeper into this dispute requires a factual inquiry that appellate courts are not set up to conduct. Perhaps it will prove necessary for this court to appoint a special master to hold an evidentiary hearing, or refer the dispute to the United States Attorney for a criminal perjury investigation. For now, however, the Fitzgerald affidavit supplies an adequate basis to adjudicate the current request on the merits. If as the Department believes Finer Foods is defunct, then an order restoring its license will have no effect and cannot harm the public interest. But if the Department is wrong, and Finer Foods remains a viable concern, then allowing the suspension to continue may kill it-- and the United States does not afford a damages remedy to firms put out of business by administrative highhandedness.

So does Finer Foods have a decent chance of success on the merits? You bet it does. The suspension order, by the Chief of the Fruit and Vegetables Program Branch, apparently was issued without an opportunity for a hearing. The order itself gives no elaboration (beyond saying that Finer Foods has not turned over everything the Department demanded) and does not tell Finer Foods what it must do concretely to have its trading rights reinstated. The Fruit and Vegetables Program Branch appears to be a principal in the dispute, not a neutral arbiter; and although this is not a formal hearing on the record subject to sec.4 of the Administrative Procedure Act, 5 U.S.C. sec.554, it is certainly an informal adjudication in which the decision should have been made after a hearing by someone without a stake in the outcome. See Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633 (1990); 5 U.S.C. sec.555. According to sec.499m(a) "the Secretary may, after thirty days' notice and an opportunity for a hearing, publish the facts and

circumstances and/or, by order, suspend the license of the offender for a period not to exceed ninety days" (emphasis added). Yet the Department of Agriculture did not offer a hearing to Finer Foods-- either before or after the issuance of the order--to test the correctness of the staff's belief that required records have not been forthcoming. And the order purports to be perpetual, though the statute sets a cap of 90 days. The Department claims an unfettered (and unreviewable) right to shut down any middleman in the produce business that does not knuckle under to an administrative request for records, no matter how burdensome the compliance and no matter how slight the governmental interest in conducting the investigation. It is discovery run riot, with no judicial supervision or even the protections offered by an administrative law judge. Finer Foods was entitled to some hearing before its license was yanked. See sec.499m(a); Gilbert v. Homar, 520 U.S. 924 (1997).

Finer Foods' motion for a stay of the Department's order, pending plenary adjudication in this court, is granted.