AGEE, Circuit Judge,
dissenting:
I respectfully dissent because we have jurisdiction to consider Cobra’s petition for review. Therefore, I would decide this *93 case on its merits and remand to the Commission for further proceedings.
I.
The majority first addresses the collateral order doctrine to find a lack of jurisdiction for appellate review. However, under settled principles regarding administrative agency decisions, the Commission’s order is a final, reviewable order, which affords us jurisdiction to hear and decide the petition for review.
The Mine Act gives us jurisdiction to hear appeals from the Commission’s orders, so we must look first to the plain text of that statute. See Blitz v. Napolitano, 700 F.3d 733, 740 (4th Cir.2012) (examining the statute’s plain text to determine jurisdiction over administrative appeal). “Any person adversely affected or aggrieved by an order of the Commission under [the Mine Act]” may obtain review. 30 U.S.C. § 816. We have held that the statute affords us jurisdiction only over “final” orders from the Commission. See Eagle Energy, Inc. v. Sec’y of Labor, 240 F.3d 319, 323 (4th Cir.2001).
Without question, the Commission issued an “order” in this case. Our task is to determine whether that order qualifies as “final,” so as to establish our authority to review it under Section 816.
To determine whether an agency’s action warrants review as a “final order,” we ask two questions.[1] First, we consider whether the decision “mark[s] the consummation of the agency’s decisionmaking process.” Golden & Zimmerman, LLC v. Domenech, 599 F.3d 426, 432 (4th Cir.2010) (emphasis omitted). Second, we examine whether the “action [is] one by which rights or obligations have been determined or from which legal consequences will flow.” Id. (emphasis omitted). In some instances, we have rephrased these two questions as four: “(1) is the agency action a definitive statement of the agency’s position; (2) does the action have direct and immediate legal force requiring parties’ immediate compliance with the agency’s pronouncement; (3) do the challenges to the agency’s actions involve legal issues fit for judicial resolution; and (4) would immediate judicial review speed enforcement and promote judicial efficiency?” Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA, 313 F.3d 852, 858 (4th Cir.2002).[2]
When these questions are asked and answered, our traditional administrative finality standards show that we have jurisdiction over Cobra’s appeal of the temporary reinstatement order.[3]
*94 A.
The Commission’s order marks the end of the decisionmaking process for purposes of the temporary reinstatement issue. Nothing more is before the Commission regarding that order, and Cobra cannot take any further steps within the administrative process to challenge it. See Monte-rey Coal Co. v. FMSHRC, 635 F.2d 291, 293 (4th Cir.1980) (relying in part on party’s failure to “exhaust[ ] its administrative remedies” in finding that Mine Act order was not a reviewable “final order”).[4]
The majority notes that the Commission observed that Cobra might seek relief from the reinstatement order if circumstances were to change. Then, the majority posits that the “volatile” mining industry could provide such changed circumstances, and, therefore, the temporary reinstatement order cannot be “final” in a jurisdictional sense.
This prospect of reconsideration does not render the Commission’s order non-final because it is so inherently speculative. Further, the prospect finds no support in the record. The Commission recognized its power to reconsider in limited circumstances, but did not announce any intention to actually exercise that power in this case. And importantly, courts generally will review a decision even if unknown future changed circumstances could affect it. See, e.g., Wis. Pub. Power, Inc. v. FERC, 493 F.3d 239, 266 (D.C.Cir.2007); City of Tacoma, Wash. v. FERC, 331 F.3d 106, 113 (D.C.Cir.2003); Sierra Club v. U.S. Nuclear Regulatory Comm’n, 862 F.2d 222, 225 (9th Cir.1988). Were it otherwise, the possibility of reconsideration would defeat our jurisdiction in most every case, agency and non-agency cases alike. For example, in cases appealed from federal district court, the district court can often revisit the order under review — perhaps after a party moves for relief under Federal Rules of Civil Procedure 59 or 60. However, we have never allowed that speculative possibility to defeat our jurisdiction to review an otherwise final order.
B.
The Commission’s order also has a direct and immediate effect because Cobra must allow Ratliff to go back to work now. There is no intermediate or additional step that would delay the full force and effect of the temporary reinstatement order. Indeed, at least one court has compared the temporary reinstatement order to a preliminary injunction. See Jim Walter Res., 920 F.2d at 744. This close relationship between the temporary reinstatement order and a preliminary injunction might *95 sustain jurisdiction in and of itself. See, e.g., Shoreham-Wading River Cent. Sch. Dist. v. U.S. Nuclear Regulatory Comm’n, 931 F.2d 102, 105 (D.C.Cir.1991); Massachusetts v. U.S. Nuclear Regulatory Comm’n, 924 F.2d 311, 322 (D.C.Cir.1991); Nev. Airlines, Inc. v. Bond, 622 F.2d 1017, 1020 & n. 5 (9th Cir.1980).
C.
Third, this appeal presents legal issues that courts can resolve. One issue presents a straightforward legal question about the burden of proof. The other constitutes a common substantial evidence challenge. See, e.g., NLRB v. M & B Headwear Co., 349 F.2d 170, 171 (4th Cir.1965) (stating that a “substantial evidence” challenge presented a “familiar question”). We do not improvidently trespass upon the agency’s province when it comes to legal questions like these, especially when, as here, the agency concedes that we possess jurisdiction and asks us to hear the appeal on its merits. See 16 Charles Alan Wright, et al., Federal Practice and Procedure § 3942 (2d ed.2013 supp.) (“If ... the agency itself desires present review, there is little need for concern that review is a judicial intrusion into the agency’s capacity to manage the course of its own proceedings.”).
D.
Finally, immediate review would speed enforcement and promote judicial efficiency. Exercising review would not slow Rat-liffs benefits because he has received those benefits from the time the ALJ entered his order; however, an immediate appeal would hasten review of alleged errors in the administrative process. That review would bring certainty to a standard that the Commission now employs in other temporary reinstatement cases. See, e.g., Sec’y of Labor ex rel. Rodriguez v. C.R. Meyer & Sons Co., No.2013-618-DM, 2013 WL 2146640, at *3-4 (F.M.S.H.R.C. May 10, 2013).
Immediate review would also avoid creating an unreviewable harm. Cobra’s claims will be unreviewable absent immediate appeal because the issue of temporary reinstatement will be moot by the time the parties resolve the full merits proceeding. As a result, we will never review the Commission’s use of the temporary reinstatement standards. That administrative immunity conflicts with the “ ‘strong presumption’ in favor of judicial review of agency action.” Speed Mining, Inc. v. FMSHRC, 528 F.3d 310, 316 (4th Cir.2008) (quoting Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)).
By refusing to review these kinds of orders, we will cause irreparable harm to both sides. A mine operator will have no opportunity to seek review should the Commission order the operator to pay wages to a miner not entitled to them. The operator will never obtain reimbursement of those wages, no matter how wrong or irresponsible an erroneous decision was to award them. As counsel for the Secretary conceded, no procedure exists that allows an operator to recoup wages paid to a temporarily reinstated miner for all periods before a final merits decision. Although the majority labels this harm “economic” or “financial,” “[a] threat of economic injury has always been regarded as sufficient ... for the purpose of finding an order final and reviewable.” Envtl. Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 592 (D.C.Cir.1971); see also Park Lake Res. Ltd. Liab. Co. v. U.S. Dep’t of Agric., 197 F.3d 448, 452 (10th Cir.1999) (“Our inquiry into harm takes into account financial ... consequences flowing from the agency action.”).
*96 An operator’s harm stems not just from the wages paid. Without an immediate appeal, mine operators will also have no way to cope with erroneous decisions that could disrupt the workplace. In the present case, for instance, the ALJ and Commission forced Cobra to reinstate a miner at full pay who allegedly engaged in disruptive acts such as fighting and yelling profanity. Reinstating that kind of an employee can damage the workplace.[5] See, e.g., NLRB v. Longview Furniture Co., 206 F.2d 274, 275-76 (4th Cir.1953) (describing the disruptive effect of a court order that forces an employer to reinstate an employee who has “use[d] profane and indecent language”). Despite this harm, a mine operator now has no judicial remedy to correct a mistaken agency decision below.
Furthermore, a miner’s appeal from an adverse decision on temporary reinstatement will also now be foreclosed because the mine operator and the miner share equal appeal rights. See, e.g., Meredith, 177 F.3d at 1048 (explaining that Mine Act’s review provision would apply identically to all persons, as the legislative history counseled a uniform approach). A future miner could very well suffer irreparable harm from not receiving needed wages in the interim period before a final merits decision. Moreover, as the Secretary has warned, that harm could defeat the Mine Act’s enforcement mechanisms and, in turn, the Congressional intent in adopting this legislation. See S.Rep. No. 95-181, at 37 (1977), 1977 U.S.C.C.A.N. 3401, 3437 (“[Temporary reinstatement is an essential protection for complaining miners who may not be in the financial position to suffer even a short period of unemployment or reduced income pending resolution of the discrimination complaint.”).
E.
The Seventh Circuit’s decision in Finer Foods, Inc. v. United States Department of Agriculture, 274 F.3d 1137 (7th Cir.2001), represents in an analogous agency setting the resolution of the jurisdictional issue using the same inquiry just completed. In Finer Foods, the court faced an appeal from (a) an administrative order, (b) implementing immediate injunctive relief, (c) against a private party, (d) pending an agency investigation and proceedings, (e) for an alleged statutory violation. The agency there contended that the court could not review the order because the agency had not completed all its proceedings related to the violation underlying the immediate relief. Id. at 1139. The Seventh Circuit deemed the agency’s argument “frivolous” and said it was “surprised and disappointed” to see the argument made at all. Id. at 1138-39.
We could, and should, end the jurisdictional analysis here, as the temporary reinstatement order at issue is, under settled administrative agency jurisprudence, a final order for purposes of appeal. The majority, however, looks to the collateral order doctrine. Because the Commission’s order is renewable on appeal even under the collateral order doctrine, I address that issue as well.
II.
The collateral order doctrine describes “that small class [of decisions] which final *97 ly determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.” Al Shimari v. CACI Int’l, Inc., 679 F.3d 205, 213 (4th Cir.2012). To qualify as a collateral order under § 1291, a district court decision must “ ‘[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.’ ”[6] Dickens v. Aetna Life Ins. Co., 677 F.3d 228, 233 (4th Cir.2012) (quoting Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006)). Some of these factors overlap with the questions just asked and answered in the administrative finality inquiry.
As in the administrative finality context, the collateral order factors indicate that we have jurisdiction. The only two other circuit courts of appeal to have considered the issue reached the same conclusion.[7] See Vulcan Constr. Materials, L.P. v. FMSHRC, 700 F.3d 297, 300 (7th Cir.2012); Jim Walter Res., Inc., 920 F.2d at 744-45.
A.
First, the Commission’s order here conclusively resolved the issue. Nothing more is to be done before the agency and no further issues pertaining to temporary reinstatement remain to be resolved by it. The temporary reinstatement order is a final and complete agency disposition of the discrete controversy before it. Accord Vulcan Constr. Materials, 700 F.3d at 300; Jim Walter Res., Inc., 920 F.2d at 743.
The majority treats the order as inconclusive because the potential for changed circumstances might allow the Commission to reopen the issue. Nevertheless, an order can be conclusive even if there is some possibility that the tribunal below will reconsider. See, e.g., Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12-13, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); accord United States v. Ochoa-Vasquez, 428 F.3d 1015, 1025 n. 7 (11th Cir.2005); Burns v. Watler, 931 F.2d 140, 145 (1st Cir.1991); Ortho Pharm. Corp. v. Sona Distribs., 847 F.2d 1512, 1515 (11th Cir.1988); In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1118 (7th Cir.1979); see also 15A Charles Alan Wright, et al., Federal Practice and Procedure § 3911 (2d ed.2013 supp.) (“The bare fact that the court has power to change its ruling, however, does not preclude review. It is enough that no further consideration is contemplated.”).
A possibility of reconsideration presents a different situation than those described in other decisions — like those that the ma *98 jority cites — that deemed orders inconclusive. In those cases, the decisionmakers expressly indicated that they would revisit the matter later, regardless of whether circumstances changed before that later reconsideration. See, e.g., Swint v. Chambers Cnty. Comm’n, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (“The District Court planned to consider its ruling ... before the case went to the jury.”); Jamison v. Wiley, 14 F.3d 222, 230 (4th Cir.1994) (finding order inconclusive where district court “made clear that its decision ... was a tentative one, made only to return things to the status quo ..., and that it might well change its mind ... after the evidentiary hearing”). In contrast, neither the ALJ nor the Commission indicated a plan to return to this issue in Ratliffs case. The ALJ spoke in unequivocal terms and ordered Cobra to provide “immediate reinstatement” to Ratliff.
B.
The Commission’s order also stands separate from the merits. The seminal collateral order doctrine case, Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), explained that an order is “separate” if it “did not make any step toward final disposition of the merits of the case and will not be merged in final judgment.” Id.
The Commission’s temporary reinstatement decision has no bearing on the later steps in resolving Ratliffs employment status; the case will proceed regardless of whether the miner is reinstated. On the merits, the case below can continue during the pendency of this appeal because nothing decided in adjudicating temporary reinstatement will affect the merits decision. That ability to continue indicates that the order under review is “collateral.” See Johnson v. Jones, 515 U.S. 304, 311, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).
The temporary reinstatement order does not merge with the final order on Ratliffs status because any issues related to the temporary order would be effectively moot by that point. The mine operator cannot then recover any erroneously awarded wages, nor cure the workplace disruption that the reinstated miner caused. Cf. Palmer v. City of Chicago, 806 F.2d 1316, 1319 (7th Cir.1986) (noting that irreparable harm would result if party did not receive immediate review of fee award, as fees could “disappear into insolvent hands”). Conversely, the miner erroneously denied temporary reinstatement cannot overcome his financial vulnerability occurring before an eventual final reinstatement order on the merits. See, e.g., Edwards v. Director, Office of Workers’ Comp. Programs, 932 F.2d 1325, 1327-28 (9th Cir.1991) (holding that statute’s anticipation of immediate relief for financial vulnerable worker called for collateral order review of order denying that relief); Rivere v. Offshore Painting Contractors, 872 F.2d 1187, 1190 (5th Cir.1989) (same).
The majority believes the Commission’s order is not separate because we must consider some of the same facts at this stage as we would at the merits stage. However, the Supreme Court accepts some “factual overlap” in the collateral order context. See, e.g., Mitchell v. For-syth, 472 U.S. 511, 528-29, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (“[T]he Court has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the Cohen test even though a reviewing court must consider the plaintiffs factual allegations in resolving the immunity issue.”). Double jeopardy and qualified immunity collateral appeals most always involve a consideration of many of the same facts that would be determinative on the merits, yet we hear those cases nonetheless. Id. at 529 n. 10, *99 105 S.Ct. 2806. Likewise, when a Congressman wished to appeal an order denying him the protection of the Constitution’s Speech and Debate Clause, the Supreme Court explained that he should have invoked the collateral order doctrine. Hel-stoski v. Meanor, 442 U.S. 500, 508, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). The Court did so even though the Congressman’s defense would necessarily require the Court to consider some of the same facts in the underlying case, including the nature of the acts for which the Congressman faced potential criminal liability. If the Supreme Court wished to avoid any consideration of any of the facts going to the underlying dispute, it would not have applied the collateral order doctrine in such cases.
C.
Finally, this case involves unreviewable and important interests. An interest is “important” if it is “weightier than the societal interests advanced by the ordinary operation of final judgment principles.” Digital Equip. Corp., 511 U.S. at 879, 114 S.Ct. 1992. The interests implicated by this case are appropriately recognized as important.
A mine operator appeals a temporary reinstatement order because it faces the prospect of paying unjustified money to a miner, reinstating a problematic worker, or facing legally unsustainable procedures below. Where the miner appeals,[8] he wishes to vindicate his right to much-needed contemporary payment and a fair process below. If a miner doubts that an ALJ will order his immediate reinstatement after an employer retaliatorily terminates him, then the miner will hesitate to make safety complaints and risk termination.
Thus, a Mine Act temporary reinstatement appeal raises important systemic issues about the balance between aggressive safety enforcement, which supports reinstatement, and the rights of the employer to define its workforce, which may counterbalance reinstatement. The Supreme Court has observed that “[wjhere statutory ... rights are concerned, irretrievable loss can hardly be trivial.” Digital Equip. Corp., 511 U.S. at 879, 114 S.Ct. 1992 (internal marks omitted).
In contrast, the interests that normally counsel for deferred review are not as strong. The underlying case is not delayed by resolution of the temporary reinstatement order appeal. Review does not impose significant costs. In so much as the temporary reinstatement decision has no impact on the later stages of Ratliffs case, our decision cannot be expected to create incoherence in the proceedings. And our decision will impact this case and future cases like it.
The majority evaluates the interests at stake in this case by comparing them to a catalog of previous collateral order doctrine cases. Cataloguing cases presents an inadequate measure of “importance,” as is well illustrated by noting the number of collateral order cases that the majority neglected to examine and which permitted appellate review. Indeed, several Supreme Court cases applied the collateral order doctrine to review collateral orders of arguably less importance than the case at bar.[9] See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (order that 90% of *100 class action notice costs be imposed on one party); Brown Shoe Co. v. United States, 370 U.S. 294, 309, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) (order contemplating future divestiture in antitrust action); Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (order on motion for reduction of bail); Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A., 339 U.S. 684, 689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (order dissolving attachment of naval vessel); Cohen, 337 U.S. at 546, 69 S.Ct. 1221 (order declining to compel plaintiff in derivative action to post a bond). These cases often involved “financial interests,” and we have also applied the collateral order doctrine in cases involving such interests. See, e.g., In re Looney, 823 F.2d 788, 791 (4th Cir.1987) (applying collateral order doctrine to order extending automatic stay in bankruptcy case).
The majority cites the issue of attorney-client privilege as an example of a “more important” issue that the Supreme Court has declined to consider under the eollateral order doctrine. However, the Supreme Court did not reject collateral review of attorney-client privilege-related orders because those orders were unimportant. Instead, the attorney-client privilege order was not immediately appealable because the aggrieved party had a variety of other options available by which it could safeguard its rights.[10] See Mohawk Indus., 558 U.S. at 108, 130 S.Ct. 599 (“Because ... collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege, we do not decide whether the other Cohen requirements are met.”); see also id. at 117, 130 S.Ct. 599 (Thomas J., concurring) (“[T]he Court’s Cohen analysis does not rest on the privilege order’s relative unimportance!!.]”). Mohawk Industries and the attorney-client privilege, then, do not offer an appropriate comparison.[11]
D.
In view of the foregoing, all the factors in a collateral order doctrine analysis sup *101 port jurisdiction in the case at bar. I see no basis that merits a circuit split on this issue, especially given that we have warned of the danger of creating circuit splits on matters related to federal rights. See Nat’l Treasury Emps. Union v. FLRA, 737 F.3d 273, 280 (4th Cir.2013) (“[TJhere would be costs in this area to holding differently and creating a circuit split.”).
The majority panel has previously recognized the dissonance caused by creating such circuit splits. See, e.g., United States v. Hashime, 722 F.3d 572, 573 (4th Cir.2013) (Gregory, J., concurring in denial of hearing en banc) (criticizing prior precedent for “creating an oft-dreaded circuit split”); Wachovia Bank v. Schmidt, 388 F.3d 414, 439 (4th Cir.2004) (King, J., dissenting) (stating that the “creation of a circuit split” on a jurisdictional issue was “unwarranted”), rev’d, 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006).
III.
Having found jurisdiction, I would remand this matter to the Commission, whose decision below deviated from earlier Commission precedent without adequately articulating a basis for doing so. Furthermore, the Commission appeared to apply a new burden of proof, in the midst of adjudicatory proceedings, without allowing the parties to adjust their case to meet that after-the-fact burden of proof.
A.
The Commission appears to have applied a new standard of proof to Cobra’s economic tolling defense. In earlier Commission cases, “[t]he Commission ha[d] recognized that the occurrence of certain events, such as a layoff for economic reasons, may toll an operator’s [temporary] reinstatement obligation.” Sec’y of Labor ex rel. Gatlin v. KenAmerican Res., Inc., 31 F.M.S.H.R.C. 1050, 1054 (2009). Mine operators had the burden to establish this tolling defense by a preponderance of the evidence. Id. at 1055. Before the ALJ, both parties and the ALJ relied on the preponderance standard. The parties continued to rely on that standard before the Commission. Nevertheless, the Commission’s decision announced a new and unexplained burden of proof. Now, a mine operator must show that it is “frivolous” to say that the subsequent economic condition itself was discriminatory. (J.A. 238-39.)
The Commission may change its benchmark and apply new standards to the tolling defense. See NLRB v. Balt. Transit Co., 140 F.2d 51, 55 (4th Cir.1944) (“[A]n administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action, because of a mistaken action on its part in the past.”). An agency’s change in position “does not ... require greater justification than the agency’s initial decision” in every case. Philip Morris USA, Inc. v. Vilsack, 736 F.3d 284, 290 (4th Cir.2013). It may be, for instance, that circumstances have changed since the agency last decided the issue and a bona fide rationale exists for the new standard. See In re Permian Basin Area Rate Cases, 390 U.S. 747, 784, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968) (“[A]dministrative authorities must be permitted ... to adapt their rules and policies to the demands of changing circumstances.”).
However, because changes to existing standards must result from reasoned judgment, the agency must explain a change in course well enough for us to be sure “that such a change in course was made as a genuine exercise of the agency’s judgment.” Philip Morris USA, 736 F.3d at 290. “An agency may not ... depart from a prior policy sub silentio or simply disre *102 gard rules that are still on the books. And of course the agency must show that there are good reasons for the new policy.” See FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) (internal citation omitted). An agency also might need to provide a fuller explanation if “its new policy rests upon factual findings that contradict those which underlay its prior policy.” Id. at 515-16, 129 S.Ct. 1800. Even if the agency delineates its change-of-course in some rudimentary way, we will still find the change inadequately explained if “its explanation is so unclear or contradictory that we are left in doubt as to the reason for the change in direction.” Robles-Urrea v. Holder, 678 F.3d 702, 710 n. 6 (9th Cir.2012); see also Mfrs. Ry. Co. v. Surface Transp. Bd., 676 F.3d 1094, 1096 (D.C.Cir.2012) (explaining an agency must “persuasively” distinguish precedents).
The Commission did not acknowledge or uphold these responsibilities while shifting course in this case. The Commission’s decision references its previous preponderance standard, but then constructs a new standard that pertains to the “objectivity” of the layoff. (J.A. 240.) The Commission at least should explain why that objectivity warrants a higher burden of proof and justified a sharp turn from the existing precedent in Gatlin.
The Commission’s inadequately explained decision cannot be saved by embracing “post hoc rationalizations” for it. See, e.g., Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (“[CJourts may not accept appellate counsel’s post hoc rationalizations for agency action”). In defense of the Commission’s decision, for instance, the Seere-tary distinguishes between the procedural posture of this case and Gatlin. But if the procedural posture provides the basis for the Commission’s new test, then the Commission should state that basis and explain why it proves persuasive. The Commission’s decision says nothing about different burdens at different stages, so we cannot uphold it on that rationale. “[A]n agency’s action may not be upheld on grounds other than those relied upon by the agency in the actual course of its decisionmaking.” Nat'l Elec. Mfrs. Ass’n v. U.S. Dep’t of Energy, 654 F.3d 496, 513 (4th Cir.2011).
Because the Commission’s explanation does not indicate that it exercised reasoned judgment in changing course, I would remand the matter to the Commission and instruct it to explain its reasoning further.
B.
Remand for a further explanation does not cure the inadequacies in the process below. For that reason, I would also instruct the Commission to take an additional step. Once the Commission has explained the new standard — with sufficient clarity for all parties to understand what must be proven and how it must be proven — the Commission must then remand to the ALJ for further proceedings under the new standard. This remand is necessary because the Commission’s midstream change of course deprived Cobra of the basic due process of notice of the current standard and the opportunity to be heard under that standard.[12]
“[A]n agency is not precluded from announcing new principles in an adjudicative proceeding and ... the choice between rulemaking and adjudication lies in the *103 first instance within the agency’s discretion.” Yanez-Popp v. INS, 998 F.2d 281, 236 (4th Cir.1993) (internal marks omitted) (quoting NLRB v. Bell Aerospace Co. Div. of Textron, Inc., 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)). Thus, an agency can retroactively apply a rule announced in adjudication in the proper circumstances. SEC v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947) (“That such action might have a retroactive effect was not necessarily fatal to its validity.”).
Notwithstanding its adjudicatory power, an agency should tread carefully when changing the standards defining an adjudicatory process in the midst of that very process. Significant due process concerns develop if an agency does not permit a litigant to offer evidence and argument bearing on the new standard. See, e.g., Consol. Edison Co. of N.Y., Inc. v. Fed. Energy Regulatory Comm’n, 315 F.3d 316, 323 (D.C.Cir.2003); P.R. Aqueduct & Sewer Auth. v. EPA 35 F.3d 600, 607 (1st Cir.1994); Aero Mayflower Transit Co., Inc. v. Interstate Commerce Comm’n, 699 F.2d 938, 942 (7th Cir.1983); Port Terminal R.R. Ass’n v. United States, 551 F.2d 1336, 1345 (5th Cir.1977); Hill v. Fed. Power Comm’n, 335 F.2d 355, 356 (5th Cir.1964).
Two cases provide clear illustrations of the problems that may occur — and the denial of due process that may result — when the agency changes the burden of proof in the middle of the proceeding.
First, in Woodward v. DOJ, 598 F.3d 1311 (Fed.Cir.2010), the Board of Justice Assistance adopted a new burden of proof in the midst of the petitioners’ appeal seeking death benefits. The shift “changed the burden of proof from a lenient standard resolving any reasonable doubt in favor of the claimant to the more stringent standard requiring that a claimant prove all material issues by a ‘more likely, than not’ standard.” Id. at 1315. The petitioners then “had no opportunity to introduce additional evidence to satisfy the heightened burden of proof.” Id: Because the Board “changed Petitioners’ burden of proof during the course of their appeal,” the Court remanded. Id.
In ’Hatch v. FERC, 654 F.2d 825 (D.C.Cir.1981), the petitioner contended that the Federal Energy Regulatory Commission improperly adopted, “after the close of the evidentiary hearing, ... a new legal standard of proof, which he was given no opportunity to meet.” Id. at 826. Just as in Woodward, the court in Hatch noted that agencies must generally provide notice of a change in the burden of proof and an opportunity to submit evidence under the new burden. Id. at 835. The D.C. Circuit indicated that an agency might avoid this general rule if (1) actual notice existed at the time of the initial hearing; or (2) the burden only changed the legal significance of evidence that the parties already submitted. Id. “But when ... the change is a qualitative one in the nature of the burden of proof so that additional facts of a different kind may now be relevant for the first time, litigants must have a meaningful opportunity to submit conforming proof.” Id. Finding that Hatch’s situation involved this kind of “qualitative” change with no opportunity to submit evidence, the court remanded for an additional hearing. Id. at 837.
As in Woodward and Hatch, the Commission in the present ease changed the quantum of proof — from a preponderance standard to a “frivolous” standard — after the close of the proceedings. It also changed the nature of the proof that the mine operator needed to offer. Under the prior test, the ALJ was to focus more upon the inevitability of the economic conditions giving rise to the potential tolling. Cobra, *104 for instance, introduced evidence concerning (1) the company’s actual layoffs and (2) why those layoffs would have included Ratliff. The new test, however, focuses more on any potentially discriminatory factors behind the layoffs. Now, a mine operator will need to introduce additional evidence concerning the non-discriminatory intent of a layoff, even apart from the economic reasons behind it. Cobra should be provided the opportunity to introduce that kind of evidence in this case.
Apart from these burden-of-proof-specific issues, agencies also act unjustly when they switch rules actually relied upon by the parties in the midst of the process. See ARA Servs., Inc. v. NLRB, 71 F.3d 129, 134-36 (4th Cir.1995) (noting reliance interests in finding that new rule developed in adjudication would not be retroactively applied to case on appeal); accord Negrete-Rodriguez v. Mukasey, 518 F.3d 497, 503-04 (7th Cir.2008); BP W. Coast Prods., LLC v. Fed. Energy Regulatory Comm’n, 374 F.3d 1263, 1280 n. 4 (D.C.Cir.2004); Consol. Edison Co., 315 F.3d at 323. The Supreme Court has instructed agencies to consider reliance interests when shaping agency positions. See, e.g., Christopher v. SmithKline Beec-ham Corp., — U.S. -, -, 132 S.Ct. 2156, 2167, 183 L.Ed.2d 153 (2012) (explaining that a party should receive “fair warning” and not “unfair surprise”); Fox Television Stations, 556 U.S. at 515, 129 S.Ct. 1800 (explaining that it is arbitrary and capricious for an agency to ignore “serious reliance interests” that a prior policy “engendered”). Nevertheless, even though both the Secretary and Cobra utilized a preponderance standard before the ALJ, the Commission developed its new standard without addressing these reliance interests.
I would direct the Commission to return this case to the ALJ in order to afford the parties the opportunity to present their cases under whatever standard the Commission determines would now apply.
IV.
For the aforementioned reasons, I respectfully dissent.

. We use these factors most often in Administrative Procedure Act cases, which involve review of "final agency action.” But the principles apply to "final orders” as well. See, e.g., U.S. W. Commons, Inc. v. Hamilton, 224 F.3d 1049, 1054-55 (9th Cir.2000); Meredith v. FMSHRC, 111 F.3d 1042, 1047 (D.C.Cir.1999).

. We do not consider two factors. First, "[a] final order need not necessarily be the very last order. Courts often review agency orders issued pending further proceedings especially where, as here, the agency's action/inaction could not be challenged in any subsequent proceeding.” NetCoalition v. SEC, 715 F.3d 342, 351 (D.C.Cir.2013) (internal marks and citations omitted). Second, we focus “not on the label attached to the action[,] but on the nature of the action.” 1000 Friends of Md. v. Browner, 265 F.3d 216, 224 (4th Cir.2001).

.In considering its jurisdiction to hear a petition for review from a Mine Act temporary reinstatement order, the Eleventh Circuit noted that such orders are likely final and reviewable. See Jim Walter Res., Inc. v. FMSHRC, 920 F.2d 738, 744 (11th Cir.1990) ("Thus, the policies that underlie the provision for review of district court orders affecting preliminary injunctive relief in 28 U.S.C. § 1292(a)(1) are applicable here and suggest that temporary reinstatement orders should be reviewable.”). Ultimately, that court did *94 not decide the issue because the collateral order doctrine "directly” granted the court jurisdiction even if the order under review were not otherwise deemed "final.” Id.

. Contrary to the majority's characterization, Monterey Coal does not decide the finality issue. In that case, we held that an order of the Commission remanding to the ALJ was not a final, reviewable order. Monterey Coal, 635 F.2d at 292-93. We reached that decision because the challenged order was only a "preliminary step in the final disposition of this case on its merits.” Id. at 293. In contrast, the temporary reinstatement order at issue here stands separate and apart from the merits of the case. Although the length of the reinstatement period is affected by the ultimate outcome of the case, the temporary reinstatement order itself has no substantive impact on the ultimate disposition. And, importantly, in Monterey Coal, the subject of the ALJ order would have been fully reviewable in a final Commission order. The direct opposite is the case here, as the payment and employment actions under the temporary reinstatement order cannot be reversed by a final order on the merits for the period of time covered by the temporary reinstatement order. Therefore, the order here cannot be the type of “preliminary step” addressed in Monterey Coal.

. This disruption stems not just from the potential that the employee will repeat his conduct in the future, but also from the actual act of reinstating him in the first instance. See Longview Furniture, 206 F.2d at 276 ("The employment of persons who have been guilty of such conduct toward their fellow employees has a disruptive effect on the employer's business as a result of the feelings and antagonisms thereby engendered.”).

. The Supreme Court has applied these factors in cases favored by the majority. See Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009); Will, 546 U.S. at 349, 126 S.Ct. 952; Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). Therefore, faithful adherence to the three-factor test ensures that the doctrine is used in only narrow circumstances. That narrow application in turn respects the Supreme Court’s recent admonitions to apply the doctrine sparingly.

. Though two courts addressed this issue directly, a third court heard an appeal from a temporary reinstatement order without commenting on jurisdiction. See N. Fork Coal Corp. v. FMSHRC, 691 F.3d 735 (6th Cir.2012). We should not "disregard the implications of an exercise of judicial authority assumed to be proper in previous cases.” Washlefske v. Winston, 234 F.3d 179, 183 (4th Cir.2000) (internal marks omitted).

. We must consider the interests of the miner in a temporary reinstatement proceeding because the Supreme Court has instructed us to look to “the entire category [of cases] to which a claim belongs.” Digital Equip. Corp., 511 U.S. at 868, 114 S.Ct. 1992.

. To list such cases is not to suggest that cataloguing is the right approach. This list *100 reveals the deficiencies in the majority’s application of its chosen approach even assuming that the approach were the correct one. And though the majority feels these cases are too old to consider, "[ljower courts have repeatedly been warned about the impropriety of preemptively overturning Supreme Court precedent.” West v. Anne Arundel Cnty., 137 F.3d 752, 760 (4th Cir.1998). We must account for these cases given that they remain good law.

. A post-judgment appeal, for instance, could remedy the effect of an improper disclosure at trial by "vacating an adverse judgment and remanding for a new trial.” Mohawk Indus., Inc., 558 U.S. at 109, 130 S.Ct. 599. Alternatively, a party who opposes disclosure could ask for an immediate appeal under 28 U.S.C. § 1292(b). Id. Or it could employ the extraordinary writ of mandamus. Id. None of these options is available to a party involved in a temporary reinstatement proceeding.

. The two other "importance” cases cited by the majority are inapposite. Will, 546 U.S. at 354-55, 126 S.Ct. 952, dealt with a statutory judgment defense analogous to res judicata. The Court found that this defense presented no special need for immediate appeal. An order on a routine defense may be easily distinguished from the immediate, injunctive nature of the Commission's temporary reinstatement order here. In Digital Equipment Corp., 511 U.S. at 869, 114 S.Ct. 1992, the Court declared that a right embodied in a privately negotiated settlement agreement was not important enough to justify immediate appeal. But the rights and interests implicated in this appeal are rights rooted in a Congressionally enacted statute; those rights could be irretrievably lost absent immediate review. "Where statutory and constitutional rights are concerned, ‘irretrievable] los[s]’ can hardly be trivial, and the collateral order doctrine might therefore be understood as reflecting the familiar principle of statutory construction that, when possible, courts should construe statutes (here § 1291) to foster harmony with other statutory and constitutional law.” Id. at 879, 114 S.Ct. 1992.

. If, after further considering its approach, the Commission decides to retain its previous Gatlin standard, then no remand to the ALJ would be necessary. In that circumstance, the Commission would decide the issue as it was originally submitted.